

# Job Offer Letter

---

**437 Grant Street,**  
**Pittsburgh, PA, 15219**

**TEL: 412-688-6406**

May 30, 2019

Attn.: Joshua Sturman  
Subject: Job Offer

Dear Mr. Joshua Sturman,

On behalf of HIPR, the staffing firm which you are employed under, it is our distinct pleasure to offer you a full time position of **Legal Writing Specialist** at Hudson Legal ("Hudson Legal Global"). We trust that your knowledge, skills, education, and prior experience as you have represented on your employment application and during the interview will be valuable assets.

Your offer of employment is conditioned on your acknowledging and signing this offer letter, as well as your signing the enclosed agreements:

1. Non-Compete Agreement;

2. Confidentiality Agreement; and

3. Hudson Legal Asset Acknowledgment Form

Should you accept this offer, your first day of employment and training will be on **TBD**. The annual salary for this position is $35,000, which will be paid biweekly ($35,000/26 weeks = $1346.15). We recognize the right of individual employees to terminate their employment for any reason whatsoever. Accordingly, your employment with the Company is at will.

Your offer provided by Hudson Legal will be as follows:
1. You will first undergo a three month probationary period as a W2 employee.
    Employees are not eligible to participate in Hudson Legal benefits until after completion



are excited about the opportunity to work with you as we create an even stronger company.

*If you choose to accept this offer, please sign the acknowledgment that follows and the enclosed documents and mail or email the signed documents back to us at your earliest convenience but no later than 6/5/2019 to fill this position, at which time it will be deemed to be withdrawn. Thank you.*

Sincerely,

*[signature]*

Shiyue Chen
Human Resources Associate

**I acknowledge that I have received and reviewed this offer letter and the documents enclosed with it as identified above. I understand and agree that the terms and conditions of my employment are exclusively set forth in the enclosed employment agreement, the Employee Handbook, and other documents that I have separately signed. I acknowledge that I am not relying on any prior statements or representations that are not contained within the referenced documents. I also confirm that I will not use any intellectual property that I do not have proper authority to use and that my employment will not violate any contractual agreements with any former employer.**

**Printed Name:** JOSHUA STURMAN

**Signature:** _[signature]_ **Date:** 5/31/19

*Offer is subject to change based on company policy and on site performance.



# NONCOMPETE AGREEMENT

This Non-compete Agreement ("Agreement") is made effective as of _____, 2019, by and between Joshua Stursman of 264 Service Way, Pittsburgh, PA 15201 ("Employee"), and Hudson Legal, of 437 Grant Street, Pittsburgh, PA 15219 ("Company").

Employee acknowledges that incident to Employee's services, Employee will gain extensive and valuable experience and knowledge relating to the business and operations of the Company and its customers/clients, as defined below, the use or disclosure of which could cause the Company substantial loss and damages that would not be readily calculated and for which no remedy at law would be adequate.

Employee also recognizes that an important part of the Employee's duties will be to develop good will for the Company through Employee's personal contact with Company's clients and others having business relationships with the Company, and that such good will is a proprietary asset of the Company and if not protected, there is a danger it may follow the Employee if Employee's relationship with the Company is terminated.

The Parties further acknowledge and agree that the Company is engaged in the conduct of a highly specialized business in a competitive industry and that the restrictive covenants in this Agreement is necessary to prevent Employee from unfairly competing with Company given Employee's access to Company's Confidential Information, and defined below, and other business operations during Employee's employment with Company.

Accordingly, Employee agrees for a period of three years after Employee's employment is terminated, for any reason, Employee will not directly or indirectly engage in any business that competes with Hudson Legal in the petition categories of EB-1 Alien of Extraordinary Ability, EB-1 Outstanding Researcher or Professor and EB-2 National Interest Waiver. Because Company provides services to clients throughout the United States, Employee agrees this covenant shall apply to the geographical area of the United States. Further, Employee shall not, for any reason, directly or indirectly, either individually or as an owner, manager, supervisor, administrator, consultant, instructor, independent contractor, or employee solicit or otherwise attempt to establish for Employee or any other person or business entity any business relationships with any person or business entity that was at any time during the 36 months preceding the Employee's termination with Company, a customer, vendor, or supplier of the Company or in which Company marketed its services to as a prospective customer, contact or solicit, directly or indirectly, the Customers of the Company



of the three-month probationary period. Two performance evaluations will take place during the probationary period. The first evaluation will take place after you have completed a one to two week training period; the second will take place at the end of the 3rd month. Completion of the probationary period does not alter the at-will employment status of your employment. As an at-will employee your employment may be terminated with or without notice for any reason.

2. After completion of the probationary period, you will be eligible for participation in the benefits provided to similarly situated employees according to the terms of the applicable plan documents. The terms and conditions of participation are subject to amendment or change without notice. Presently, these benefits include:

   - Health, dental and vision insurance (the Company presently pays 50% of the monthly premium for the employee only)
   - Optional 401K
   - Disability insurance, including long-term and short-term disability insurance
   - 7 paid leave days annually (prorated during the first year). Annual paid leave allotment will increase by one day with each full year of employment.
   - 6 paid holidays
   - Gym membership reimbursement (up to $40/month)
   - Eligibility for 3% annual pay raise.
   - Accrual of work-from-home days.

     - 1 day/month once you have been with the company for 1 year from your trial period end date
     - 2 days/month once you have been with the company for 2 years from your trial period end date.
     - 3 days/month once you have been with the company for 3 years from your trial period end date.

   - Relocation Fee: You will receive a $1,500 taxable relocation fee through direct deposit after you have successfully passed your probationary period. You must return the relocation fee if you leave the position within a year.

3. Signing bonus: You will receive a $500 signing bonus. This signing bonus will have to be returned if overall employment period is less than a year. The signing bonus will be issued to you after you have successfully passed your probationary period.

4. Overtime



- The Company strives to maintain sufficient staff to provide for an even workload. However, the workweek may fluctuate based on client demand and business needs. Accordingly, you should prioritize to aim for maximum work quality and efficiency. Overtime hours (calculated on hours worked in excess of 40 hours per week) are compensated at 1.5 times the regular hourly rate.

- Overtime may be approved if there is a need for you to complete **additional work** or if there is a business need for you to cover the absence of another employee. You must ask HR for approval before working overtime. You should only work overtime if the request is approved.

5. After you have passed your probationary period, it is the Company's standard that you provide at least 4 weeks' notice if you wish to terminate your employment for any reason. You will only receive reimbursement of your unused paid days if you give the Company 4 weeks' written notice.

As a full time **Legal Writing Specialist**, you will be responsible for the following job duties, which may change from time-to-time, under the supervision of the attorneys of Hudson Legal or its client law firm.

Specific job duties:
1. Prepare immigration-related letters and documents;
2. Conduct legal and project-related research;
3. Handle letter revisions; and
4. Perform other duties as assigned by your team leader or attorneys.

You are expected to arrive at the office before 9:30 AM, Monday to Friday, and to work a full 40 hour week. You have the ability to leave the office early if all of your work and projects are complete and your supervisor/team leader does not have additional work for you to perform. You are responsible for ensuring that you work sufficient hours to complete assigned tasks and projects on a timely basis.

Your performance, quarterly evaluation, payroll and attendance will be under the supervision of your team leader, Hudson Legal or client law firm attorneys, and human resources personnel.

We know you will find working here to be a rewarding and career enhancing experience. We



for purposes of providing services or selling products to the Customers, (ii) provide services or sell products, directly or indirectly, whether as an employee, contractor, vendor, owner, partner, investor or agent to the Customers of the Company, (iii) market or advertise the services or products of any other individual or entity to the Customers of the Company or (iv) interfere with or attempt to interfere with, whether or not for his/her own benefit, the services provided by the Company to its Customers.

Nothing in this Section shall be construed to prevent Employee from owning, as an investment, not more than 10% of a class of equity securities issued by any competitor of the Company or its affiliates and publicly traded and registered under applicable sections of the Securities Exchange Act of 1934.

**1. NON-SOLICITATION COVENANT.** For a period of three years after the effective date of this Agreement, Employee will not work for or do business, directly or indirectly solicit business from, or attempt to sell, license or provide the same or similar products or services as are now provided to, any person or entity that was a customer or client of Hudson Legal during the 24 month period prior to Employees separation from employment with Hudson Legal. Further, during Employees employment with Hudson Legal and for a period of three years after separation from Hudson Legal, Employee will not directly or indirectly employ, solicit, induce or attempt to induce any employee of Hudson Legal to terminate his or her employment with Hudson Legal.

**2. CONFIDENTIALITY.** As used in the Agreement, **"confidential information"** or "proprietary information" means any tangible and intangible non-public information in any form (including written information, oral statements, visual observations of the Company's operations at its business premises, electronically stored data and electronically transmitted data) regarding the Company, its clients, or its business operations. Employee will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate in any manner any information that is confidential or proprietary to Hudson Legal or that Employee had access to only as an employee of Hudson Legal. Employee will protect such information and treat it as strictly confidential. The obligation of Employee not to disclose confidential or proprietary information shall continue after Employee's employment with Company is terminated, for any reason. Immediately after the termination of the employment, Employee will return to Hudson Legal all Company's information, including confidential or proprietary, in any format. This includes documents, emails, databases, contracts, spreadsheets, client information, records, notes, documentation and any other information or



items that Employee had access to as an employee of Hudson Legal.

**3. SEVERABILITY.** The parties have attempted to limit this Agreement so that it applies only to the extent necessary to protect legitimate business and property interests of the parties. If any provision of this Agreement is held invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**4. INJUNCTION.** Employee acknowledges that great loss and irreparable damage would be suffered by the Company if Employee should breach or violate the terms of this Agreement because of the competitive nature of the industry and the special knowledge of the affairs and operations of the Company that Employee will gain through Employee's employment. If Employee breaches or threatens to breach any of the provision of this Agreement, the Parties agree that the Company would not have an adequate remedy at law and that, therefore, the Company will be entitled to a temporary restraining order without notice to employee and a permanent injunction to prevent a breach of any of the terms or provisions contained in this agreement. Therefore, upon any actual or impending violation of this Agreement, the Company shall be entitled to the issuance of a restraining order, preliminary and permanent injunction, without bond, restraining or enjoining such violation by Employee or any other entity or person acting alone or in concert with Employee. Such remedy will be additional to and not in limitation of any other remedy which may otherwise be available to the Company. Employee agrees that Employee's liability in any proceeding accruing from the breach of this Agreement will include not only the monetary proceeding commenced in breach of this Agreement, but also all other damages, costs, and expenses sustained by the Company on account of such action, including, without limitation, attorney fees, all other costs, expenses, and lost profits. The Company shall also have the right to require Employee to render an accounting to pay over to the Company all compensation including profits derived or received by Employee as a result of breaching this Agreement and Employee agrees to account for and pay over such compensation and profits. Employee further agrees that the Company will be entitled to immediate (i.e., without prior notice) preliminary and final injunctive relief to enjoin and restrain Employee from performing any prohibitive actions described in this Agreement, in addition to any other remedy provided by law or this Agreement, including the recovery of compensatory and punitive damages from Employee.



**5. ENFORCEMENT COSTS.** The Company shall be entitled to its costs, actual attorney fees and any other expenses and damages incurred to enforce or prevent a violation of this Agreement. Company shall also be entitled to recover costs or expenses incurred by Company in retrieving any Company provided equipment or information.

**6. REMEDIES CUMULATIVE.** All rights and remedies conferred upon by the Parties to this Agreement or by law, in equity, or other rights and remedies arising under other or subsequent agreements between the Parties will be cumulative of each other and neither the exercise nor the partial exercise nor the failure to exercise any such right or remedy will preclude the later exercise of such right or remedy or the exercise of any other right or remedy.

**7. NO WAIVER.** The waiver of any provision of this Agreement by either party shall not constitute a continuing waiver or a waiver of any subsequent performance or breach of the same or other provision of this Agreement.

**8. EXTENDING THE RESTRICTION PERIOD.** The Parties agree that the running of the period during which the non-compete restrictions set forth in this Agreement apply will be tolled during the continuance of any breach or violation by Employee of his/her covenants and agreements contained in this Agreement, and the period will be extended by the length of time during which any such breach or violation continues.

**9. ASSIGNABILITY.** This Agreement, and any and all rights and obligations hereunder, are freely assignable by the Company without the consent of Employee. Employee cannot assign or delegate any covenant, right, remedy, or obligations under this Agreement without Company's prior written approval.

**10. COUNTERPARTS.** This Agreement may be executed in counterparts, each of which shall be an original, but all of which shall together constitute one document.

**11. GOVERNING LAW.** This Agreement shall be governed by, interpreted, and construed in accordance with the laws of Michigan with no regard to conflict of any applicable conflict of law principles. The Parties agree that any dispute arising between the parties, including any dispute concerning the interpretation, validity, enforceability, or exercise of any remedies from an alleged breach of the Agreement must be adjudicated in the county where the Company's principal executive office is located at the time of the dispute, or the



applicable district or division of a federal court having venue for disputes in that same county and Employee stipulates and agrees to submit to the personal jurisdiction of the Michigan state or federal courts located in the county identified in this paragraph. Employee also waives any claim that the state or federal court located in such county are not a convenient forum or the proper venue for any such suit, action, or proceeding.

**12. NON-DISPARAGEMENT.** Employee agrees that employee will not, at any time, publish, post, and/or make any comments about the Company that are, or could be interpreted to be, disparaging, derogatory or that will paint the Company in a negative light. Specifically, Employee agrees, among other things, that employee will not publish, post and/or make any disparaging, derogatory or negative comments about Company officers, directors, owners, employees, products, policies, practices and office culture and office environment. If employee breaches the commitments contained in this Section, employee will be liable to the Company for any resulting harm and legal costs incurred.

**13. ENTIRE AGREEMENT; AMENDMENTS.** This is the entire Agreement between Employee and Company and it supersedes all prior discussions and agreements between the Employee and the Company concerning the matters contained in this Agreement and constitutes the sole and entire agreement between the Employee and the Company. No amendment or modification of this Agreement or of any covenant will be valid unless evidenced by a writing signed by Employee and an authorized representative of the Company.

**14. PUBLIC STATEMENTS.** Employee understands that Company is a full-service immigration professional services firm, and that Company has business interests in ensuring that its employees are not making public statements that could be attributed to the Company itself or could cause potential conflicts for the Company. Accordingly, Employee understands and agrees that Employee cannot, without prior written permission of the Company, make or publish, whether oral or written, any public statements related to immigration law or immigration issues that are related to the legal services performed by the Company or its employees. For purposes of this provision, Employee acknowledges that making or publishing any oral or written public statements includes any statements made to any reporters or news outlets, any blog posts, any articles written by Employee, whether written anonymously or attributed to Employee, any posts or commentary on social media websites, or any other public statement that could reasonably be attributed to the Company.



## Your Agreement to Accept the Terms of the Employment Agreement

By signing below, your signature represents that you: (i) Have read all of the preceding terms of this Agreement; (ii) Have had an opportunity to consult with legal counsel of your own choosing or have chosen not to do so; (iii) Have relied fully and completely on your own judgment or advice of your own attorneys in executing this Agreement; (iv) Are legally competent and authorized to execute this Agreement.

PROTECTED PARTY:
Hudson Legal

By: _____
    Shiyue Chen
    Human Resources Associate

EMPLOYEE: _____ Dated: 5/31/19
    Joshua Sturman



# CONFIDENTIALITY AGREEMENT

I, __JOSHUA STURMAN__ OF __264 SERVICE WAY, PITTSBURGH 15201__
   (Name)                    (Address)

in the State of Pennsylvania, will be employed by HIPR and provided the opportunity to work in Hudson Legal, PC. My employment shall strictly abide by the following terms and conditions:

1. I acknowledge that I have been advised by **HIPR and Hudson Legal** that all information and documents that I may have knowledge of or access to through my employment with **HIPR and Hudson Legal** are strictly confidential.

2. I agree at all times to treat as confidential all information acquired through my employment with **HIPR and Hudson Legal**, and not to disclose same except as authorized in the course of my employment or by law. I acknowledge that such information is not to be altered, copied, interfered with or destroyed, except upon authorization and in accordance with the policy of **HIPR and Hudson Legal**. I will not discuss such information with any party, nor will I participate in or permit the release, publication or disclosure of such information, nor will I copy, photograph, scan, email, distribute, or disseminate such information, except as authorized in the course of my employment or by law.

I understand that this agreement includes:
   a. never discussing the information of a client, the client's file or any details thereof with anyone other than a member of **HIPR and Hudson Legal** directly concerned;
   b. avoiding the use of names of clients in conversations with other clients, friends or relatives;
   c. ensuring that disclosures of information are made only to persons entitled to that information;
   d. ensuring that conversations relating to clients or other **HIPR and Hudson Legal** businesses are not conducted in public areas where conversations may be heard by people other than **HIPR and Hudson Legal** personnel; and

3. I understand and acknowledge that, as an employee of **HIPR and Hudson Legal**, I am



required to honor and be bound by the applicable provisions of the *Michigan and Pennsylvania Rules of Professional Conduct* in matters of confidentiality of information in the same manner as all the lawyers of Hudson Legal, even after I have left the employment of **HIPR and Hudson Legal**. I understand that if I have any questions about these professional conduct rules, I should ask HR. In general, these requirements include the following:

   a. I shall hold in strict confidence all information concerning the business and affairs of the client acquired in the course of the professional relationship, regardless of the nature or source of the information or of the fact that others may share the knowledge, and shall not divulge any such information unless disclosure is expressly or impliedly authorized by the client, or is required by law or by a court.

   b. I shall take all reasonable steps to ensure the privacy and safekeeping of a client's confidential information.

   c. I shall not disclose the facts of having been consulted or retained by a person unless the nature of the matter requires such disclosure.

   d. I shall preserve the client's secrets even after the termination of the services.

4. I understand that compliance with the confidentiality requirements of **HIPR and Hudson Legal** is a condition of my employment and that failure to comply with the policy may result in discipline, up to and including termination of my employment by **HIPR and Hudson Legal**.

5. I agree to be bound by the provisions of this Agreement and will continue to be so bound following the termination of my employment.

6. I have been advised that I have the right to seek independent legal advice prior to signing this agreement.

SIGNED this 31 day of MAY, 2017.

_____
Signature



# Hudson Legal Asset Acknowledgment Form

I, JOSHUA STURMAN, understand the guidelines and policies for Hudson Legal equipment use. I will only be using Hudson Legal assets for business purposes only. Any software or hardware installed is required to have prior approval before installation. Upon my employment termination with Hudson Legal (whether voluntary or involuntary), I will return all of the assets referenced below (the "Assets") within 24 hours and also provide my computer's username and password information to Human Resources before leaving. I understand failure to do so may require me to pay Hudson Legal the greater amount of the actual cost for retrieving the Assets and/or recovering the information that reside on the Assets. Should my final paycheck not cover expenses, Hudson Legal retains the right to file for reimbursement through legal proceedings.

| **Employee Name** | JOSHUA STURMAN |
| --- | --- |
| **Address** | 264 SERVICE WAY PITTSBURGH, PA 15201 |
| **Contact Phone Number** | 818 665 6348 |
| **Email** | JoshSturman@gmail.com |
| **Computer Type** | |
| **Computer Serial Number** | |
| **Product ID** | |
| **Keyboard Type** | |
| **Keyboard S/N** | |
| **Comments (condition, etc.)** | |



Joshua Sturman

Print Name

*[signature]*

Signature

5/31/19

Date


Shiyue Chen
Human Resources Associate

*[signature]*

Signature


Date