**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WINSTON SHAY, an individual,

          Plaintiff,

     vs.                       Case No. 2:23-cv-10539-GCS
                                    Hon. George Caram Steeh
ABIGAIL SCHULTZ, an individual and      Magistrate Judge Curtis Ivy, Jr.
JOSHUA STURMAN, an individual,

          Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS**

     Defendants Abigail Schultz and Joshua Sturman, by the undersigned attorneys,

respectfully request that this Court dismiss Plaintiff Winston Shay's Complaint for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R.

Civ. P. 12(b)(3) and failure to state a claim upon which relief may be granted pursuant to Fed.

R. Civ. P. 12(b)(6).  Plaintiff utterly fails to make *prima facie* cases that this Court's exercise of

personal jurisdiction over Schultz or Sturman is proper or that the Court is an appropriate

venue – moreover, none of the claims asserted against Defendants withstand scrutiny.  A

brief explaining why dismissal should be granted accompanies this Motion and is

incorporated by reference.

     WHEREFORE, Defendant Abigail Schultz and Joshua Sturman respectfully request that

the Court dismiss the Complaint for lack of personal jurisdiction, improper venue and failure

to state a claim upon which relief may be granted and that it award any other relief that the

Court deems just and proper.

Date:  June 23, 2023

Respectfully submitted,

 /s/ *Seth D. Matus*

One of Defendants' Attorneys

Seth Matus (IL ARDC 6272674)
Fish, Potter, Bolaños, P.C.
200 E. 5th Avenue, Suite 115
Naperville, IL  60563
(630) 861-1800
smatus@fishlawfirm.com

Channing Robinson-Holmes (P81698)
Megan Bonanni (P52079)
Pitt, McGehee, Palmer
Bonanni & Rivers PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonanni@pittlawpc.com
crobinson@pittlawpc.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that on June 23, 2023, he electronically filed the foregoing Motion with the Court using the CM/ECF system.  Notice of this filing will be sent to all parties via the Court's system.  Parties may access this filing through the Court's system.

By: <u>/s/ Seth D. Matus</u>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WINSTON SHAY, an individual,

           Plaintiff,

     vs.                          Case No. 2:23-cv-10539-GCS
                                 Hon. George Caram Steeh

ABIGAIL SCHULTZ, an individual and     Magistrate Judge Curtis Ivy, Jr.
JOSHUA STURMAN, an individual,

           Defendants.

_____/

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

      Defendants Abigail Schultz and Joshua Sturman, by the undersigned attorneys, for

their Brief in Support of Motion to Dismiss, pursuant to Rules 12(b)(2), 12(b)(3) and 12(b)(6)

of the Federal Rules of Civil Procedure, state as follows:

### STATEMENT OF ISSUES PRESENTED

1.     Is it proper under the Michigan Long-Arm Statute and the Due Process Clause

       of the Fourteenth Amendment of the United States Constitution for this Court

       to exercise personal jurisdiction over Schultz and Sturman?

**DEFENDANTS' ANSWER:**  No.

2.     Is the Eastern District of Michigan a proper venue for this matter?

**DEFENDANTS' ANSWER:**  No.

3.     Has Plaintiff pleaded claims against Defendants upon which relief may be

       granted?

**DEFENDANTS' ANSWER:**  No.

**TABLE OF CONTENTS**

CONTROLLING AND APPROPRIATE AUTHORITY ........................................................ iv

INDEX OF AUTHORITIES ....................................................................................... v

INDEX OF EXHIBITS ........................................................................................... viii

L.R. 7.1(a) CERTIFICATION ................................................................................. ix

INTRODUCTION ................................................................................................ 1

PERSONAL JURISDICTION ARGUMENTS .............................................................. 2

I.      PERTINENT ALLEGATIONS OF THE COMPLAINT AND DEFENDANTS' AFFIDAVIT ........ 2

II.     LEGAL STANDARD FOR RULE 12(B)(2) MOTION TO DISMISS ........................... 3

III.    RULE 12(B)(2) ARGUMENT ........................................................................ 6

        A.   MICHIGAN'S LONG-ARM STATUTE DOES NOT AUTHORIZE THE EXERCISE OF PERSONAL
             JURISDICTION OVER THE DEFENDANTS ............................................ 6
             1.   *Plaintiff Cannot Make a Prima Facie Case for this Court's Jurisdiction
                  under MCL § 600.745(2)* .................................................. 6
                  a.   The Forum Selection Clause Is Inapplicable ................ 6
                  b.   Michigan Is Not A Reasonably Convenient Place For The
                       Trial Of The Action ...................................... 8
             2.   *There Is No Personal Jurisdiction under MCL § 600.705(2)* ........ 9
        B.   THE EXERCISE OF PERSONAL JURISDICTION WOULD VIOLATE DEFENDANTS' DUE PROCESS
             RIGHTS ................................................................... 10
             1.   *Plaintiff Cannot Demonstrate "Purposeful Availment" By Defendants* 10
             2.   *Plaintiff's Claims Do Not "Arise From" Any Contacts Defendants Had
                  With Michigan* .......................................................... 11
             3.   *The Exercise of Jurisdiction By This Court Over Defendants Would Be
                  Unreasonable.* .......................................................... 12

IV.     ALTERNATIVELY, THE CASE SHOULD BE DISMISSED FOR IMPROPER VENUE ............ 12

DEFENDANTS' ARGUMENTS REGARDING FAILURES TO STATE CLAIMS ................... 13

I.      LEGAL STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON
        WHICH RELIEF MAY BE GRANTED ............................................................ 13

II.     THE COMPLAINT ITSELF DEMONSTRATES THAT PLAINTIFF WAS NOT DEFAMED AND
        THAT THE TWITTER ACCOUNT, WEBSITE AND FLYERS WERE MERELY EXPRESSING
        NON-ACTIONABLE OPINIONS AND WERE SUBSTANTIALLY TRUE ...................... 14

        A.   COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION PER SE ................. 14
        B.   THE STATEMENTS AT ISSUE IN COUNT I WERE SUBSTANTIALLY TRUE ........ 16

C.   PLAINTIFF FAILED TO SUFFICIENTLY PLEAD DEFENDANTS MADE THE STATEMENTS WITH
         ACTUAL MALICE ................................................................................................. 17

D.   ALL STATEMENTS ALLEGED TO BE DEFAMATORY ARE HYPERBOLE AND/OR OPINIONS ..... 17

E.   BOTH COUNTS I AND II FAIL TO STATE THE PRECISE MATERIALLY FALSE STATEMENTS
         ALLEGEDLY MADE ...............................................................................................19

F.   COUNT II FAILS TO SUFFICIENTLY PLEAD SPECIAL DAMAGES ...........................................19

III.   COUNT III OF THE COMPLAINT FAILS BECAUSE IT IS PREEMPTED AND DOES NOT
         INVOLVE A COMMERCIAL APPROPRIATION OF PLAINTIFF'S IMAGE ......................... 20

IV.   PLAINTIFF'S COPYRIGHT CLAIM IN COUNT IV CANNOT RECOVER FEES OR
         STATUTORY DAMAGES AND IS BARRED UNDER THE FAIR USE DOCTRINE ...............22

CONCLUSION ..................................................................................................................24

CERTIFICATE OF SERVICE ................................................................................................ 26

## CONTROLLING AND APPROPRIATE AUTHORITY

Fed. R. Civ. Pro. 12(b)(2)

Fed. R. Civ. Pro. 12(b)(3)

Fed. R. Civ. Pro. 12(b)(6)

Mich. Comp. Laws § 600.745

Mich. Comp. Laws § 600.705 (2)

*Means v. United States Conference of Catholic Bishops,* 836 F.3d 643, 649 (6th Cir. 2016)

*Williams v. Detroit Bd. of Educ.*, 306 Fed. App'x. 943, 946-947 (6th Cir. 2009)

*Wright v. Penguin Random House*, 783 Fed. App'x. 578, 582-583 (6th Cir. 2019)

17 U.S.C. § 412

17 U.S.C. § 107

# INDEX OF AUTHORITIES

## COURT RULINGS

*Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) ..........................................................5

*Serras v. First Tenn. Bank NA*, 875 F.2d 1212, 1214 (6th Cir. 1989) ....................................5

*Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007)................5

*Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016)... 5, 6, 10

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) .................... 6

*United Rentals, Inc. v. Keizer*, 355 F.3d 399, 409 (6th Cir. 2004) .......................................... 6

*Jones & Jones Leasing Co. v. Zepsa Industries, Inc.*, Case No. 19-12746, 2020 U.S. Dist. LEXIS 177260, ** 9-11 (E.D. Mich. 9/28/20) .....................................................................5

*Estate of Popovich v. Sony Music Entm't.* Case No. 1:11-cv-2052, 2012 U.S. Dist. LEXIS 34482, **6-7 (N.D. Ohio 3/14/12) .....................................................................................7

*Lease Acceptance Corp. v. Adams*, 724 N.W.2d 724, 734-35 (Mich. Ct. App. 2004) ........................ 8

*Cray v. General Motors Corp.*, 207 N.W.2d 393, 399 (1973) .......................................... 8

*Rolls-Royce Sols. Am. Inc. v. ACS Mfg., Inc.*, 619 F.Supp.3d 756, 767 (E.D. Mich. 2022) .............. 8, 9

*Green v. Wilson*, 565 N.W.2d 813, 817 (Mich. 1997) .......................................................... 9

*SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) ............................................. 9

*McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F.Supp.2d 501, 505-507 (E.D. Mich. 2004) .............. 9

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-722 (6th Cir. 2000) ..................................................10

*See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 Fed. App'x. 518, 522 (6th Cir. 2006) ..............................11

*Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 507-508 (6th Cir. 2014) ........................11

*Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005) ......................................... 12

*Negash v. Devry Univ.*, Case No. 17-10256, 2018 U.S. Dist. LEXIS 53727, ** 6-7 (E.D. Mich. 3/30/18) ....................................................................................... 12

*Audi AG & Volkswagen of Am, Inc. v. Izumi*, 204 F.Supp.2d 1014, 1022 (E.D. Mich. 2022) ......... 12, 13

*Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 538 (6th Cir. 2002) ................................ 13

*Hensley Mfg. Inc. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) ............................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................... 13

*Williams v. Detroit Bd. of Educ.*, 306 Fed. App'x. 943, 946-947 (6th Cir. 2009) ............................14

*Marks One Care Rental, Inc. v. Auto Club Grp. Ins. Co.*, 761 Fed. App'x. 516, 524 (6th Cir. 2019) ......................................................................................................14, 15

*Lakin v. Rudd*, 896 N.W.2d 76, 82 (Mich. Ct. App. 2016) .........................................................14, 15

*Daneshvar v. Kipke*, 266 F.Supp.3d 1031, 1057-1058 (E.D. Mich. 2017) ............................................... 15

*Radiant Global Logistics, Inc. v. BTX Air Express of Detroit, LLC*, Case No. 18-12783, 2021 U.S. Dist. LEXIS 153590, ** 18-19 (E.D. Mich. 8/16/21) ................................................. 15

*Rynewicz v. Clarivate Analytics*, 803 Fed. App'x. 858, 867 (6th Cir. 2020) ........................ 16, 17, 19

*Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) ......................................... 16

*Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ........................................ 16

*Solo v. UPS Co.*, 819 F.3d 788, 794 (6th Cir. 2016) ........................................ 16

*Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150*, 439 F.Supp.3d 933, 944-945 (E. D. Mich. 2020), aff'd., 3 F.4[th] 866 (6th Cir. 2021) ........................................ 17

*Joliff v. Nat'l. Lab. Rel. Bd.*, 513 F.3d 600, 614 (6th Cir. 2008) ........................................ 17

*Boladian v. UMG Recordings, Inc.*, 123 Fed. App'x. 165, 170 (6th Cir. 2005) ..................................... 18

*Boulger v. Woods*, 917 F.3d 471, 474 (6th Cir. 2019) ........................................ 18

*Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) ........................................ 18

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 695-696 (6th Cir. 2011) ........................................ 18

*Adamo Demolition Co. v. Int'l. Union of Operating Eng'rs. Local 150, AFL-CIO*, 3 F.4[th] 866, 875 (6th Cir. 2021) ........................................ 19

*Heike v. Guevara*, 654 F.Supp.2d 658, 676 (E.D. Mich. 2009) ........................................ 20

*Flynn v. Greg Anthony Constr. Co.*, 95 Fed. App'x. 726, 733 (6th Cir. 2003) ........................................ 20

*Ruffin-Steinback v. de Passe*, 82 F.Supp.2d 723, 729 (E.D. Mich. 2000) ........................................ 20

*Wright v. Penguin Random House*, 783 Fed. App'x. 578, 582-583 (6th Cir. 2019) .................... 20, 21

*Ouderkirk v. PETA*, Case No. 05-10111, 2007 U.S. Dist. 29451, * 53-55 (E.D. Mich. 3/29/07) ............. 21

*Battaglieri v. Mackinac Center for Public Policy*, 680 N.W.2d 915, 920 (Mich. Ct. App. 2004) ...... 21

*Compuware Corp. v. Nat'l. Lab. Rel. Bd.*, 134 F.3d 1285, 1291 (6th Cir. 1998) .................................. 22

*Johnson v. Jones*, 149 F.3d 494, 505-506 (6th Cir. 1998) ........................................ 23

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-579; 114 S.Ct. 1164, 1171 (1994) ................... 23

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348-349; 111 S.Ct. 1282, 1289 (1991) ........ 24

*Monsarrat v. Newman*, 28 F.4[th] 314, 324 (1st Dist. 2022) ........................................ 24

*Jackson v. Warner Bros.*, 993 F.Supp. 585, 591-592 (E.D. Mich. 1997) ........................................ 24

## OTHER AUTHORITY

735 ILCS 110/1, et seq ........................................ 1

Fed. R. Civ. P. 12(b)(2) ........................................ 4-6

*Mich. Comp. Law § 600.701* ..................................................................5

*Mich. Comp. Law § 600.745* ............................................................ 5, 6, 8

*Mich. Comp. Law § 600.705(2)* ........................................................... 5, 9

*Mich. Comp. Laws § 600.5805(11)* ........................................................10

*Fed. R. Civ. Pro. 12(b)(3)* ...........................................................12, 13

*28 U.S.C. § 1391(b)* ...................................................................12, 13

*Fed. R. Civ. Pro. 12(b)(6)* ...............................................................13

*Mich. Comp. Laws § 600.2911(1)* .....................................................14, 15

*Mich. Comp. Laws § 408.484* .............................................................15

*Mich. Comp. Laws § 408.485* .............................................................15

*29 U.S.C. § 157* .........................................................................21

*Mich. Comp. Laws § 423.8* ...............................................................21

*Mich. Comp. Laws § 408.483a* ............................................................22

*17 U.S.C. § 412* .........................................................................22

*17 U.S.C. § 107* .........................................................................23

*17 U.S.C. § 107(1)* ......................................................................23

*17 U.S.C. § 107(4)* ......................................................................24

**INDEX OF EXHIBITS**

1.  Complaint

2.  Affidavit of Abigail Schultz

3.  Affidavit of Joshua Sturman

4.  United States Department of Labor Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, Or Other Compensation

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned, an attorney, hereby certifies that in accordance with Rule 7.1(a) of the Local Rules of the United States District Court for the Eastern District of Michigan that prior to filing this motion, there were communications between counsel of record in which the undersigned explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Date:  June 23, 2023                                       /s/ *Seth D. Matus*

                                                          One of Defendants' attorneys

**INTRODUCTION**

In his Complaint, Plaintiff Winston Shay (Plaintiff or Shay) asserts that Defendants Abigail Schultz (Schultz) and Joshua Sturman (Sturman) have conspired to harm Shay and his business, Hudson Institute of Process Research, Inc. (Hudson). Shay purports to plead four causes of action against Defendants: Defamation *per se* (Complaint Count I), Defamation *per quod* (Complaint Count II), misappropriation of likeness (Complaint Count III) and copyright infringement (Complaint Count IV).

Contrary to the portrayal in the Complaint, it is Shay and Hudson that are engaging in wholesale wrongdoing. As is discussed below and in Defendants' contemporaneously-filed Motion for Stay, during their employment at Hudson, Defendants were openly at the forefront of an (eventually successful) unionization drive, acted as whistleblowers and otherwise engaged in various protected activities. Not being satisfied with terminating the employment of Schultz and Sturman (as well as other nonparty union organizers) for fabricated reasons, Hudson and Shay engaged in extensive unlawful efforts to quash the union drive, which efforts are now the subject of a Consolidated Complaint pending before the National Labor Relations Board (NLRB Case No. 06-CA-281972, *et al*). Hudson additionally filed a complaint against Schultz and Sturman in Illinois state court raising matters that overlap with this case. As is discussed in the Motion for Stay, the judge presiding over the Illinois state matter recently found Hudson's complaint to be meritless and a "Strategic Lawsuit Against Public Participation" in violation of Illinois' Citizen Participation Act, 735 ILCS 110/1, *et seq*. The current case is more of the same.

Shay's Complaint suffers from multiple fatal issues. As is shown below, there is no

basis whatsoever for this Court to exercise personal jurisdiction over two nonresident

defendants in favor of a nonresident plaintiff – the forum selection clause mentioned in the

Complaint is inapplicable and Defendants clearly do not have sufficient minimum contacts

with Michigan to create personal jurisdiction.  For similar reasons, this is not a proper venue

for this proceeding.

Additionally, the Complaint does not state any claims against Defendants on which

relief may be granted.  Again, this matter arises in a situation in which Defendants led a

successful effort to unionize Hudson's workforce.  The purportedly defamatory statements

are clearly nonactionable opinions and/or hyperbole arising out of that effort.  No action for

misappropriation of likeness lies because the claim is preempted and Defendants are

accused of utilizing Plaintiff's image in a non-commercial context.  Lastly, although the only

relief sought by Plaintiff for copyright infringement are statutory damages and attorney's

fees, that relief is foreclosed under the Copyright Act, and, in any case, Defendants are using

Plaintiff's image for a fair use.  For all these reasons, the Court should dismiss the Complaint

with prejudice.

**DEFENDANTS'  PERSONAL JURISDICTION ARGUMENTS**

**I.      PERTINENT ALLEGATIONS OF THE COMPLAINT AND DEFENDANTS' AFFIDAVITS**

In his Complaint, a copy of which is attached hereto as Exhibit 1, Shay acknowledges

that he is a resident of the State of Washington, that Schultz is a resident of the State of

Illinois and that Sturman is a resident of the State of Pennsylvania.  (Complaint ¶¶ 1-3).

Somewhat confusingly, the Complaint alleges that venue is proper because case issues arise

from "the employment of both Plaintiff and Defendants in the State of Michigan," while also

admitting that Schultz worked from Hudson's Chicago office and Sturman worked from

Hudson's Pittsburgh office.  (Complaint ¶¶ 5, 11 and 13).

Shay references the Noncompete Agreements executed by Defendants and

contends that these contracts "consent to the jurisdiction of Michigan courts for all

disputes." (Complaint ¶¶ 6, 12, 14 and 15).  In fact, the relevant provision of the

Noncompete Agreements state as follows:

> This Agreement shall be governed by, interpreted and
> construed in accordance with the laws of Michigan with no
> regard to conflict of any applicable conflict of law principles.
> The Parties agree that ***any disputes arising between the parties,***
> ***including any dispute concerning the interpretation, validity,***
> ***enforceability, or exercise of any remedies from an alleged***
> ***breach of the Agreement*** must be adjudicated in the county
> where the Company's principal executive office is located at the
> time of the dispute, or the applicable district or division of a
> federal court having venue for disputes in that same county and
> ***Employee stipulates and agrees to submit to the personal***
> ***jurisdiction of the Michigan state or federal courts located in the***
> ***county identified in this paragraph.  Employee also waives any***
> ***claim that the state or federal court located in such county are***
> ***not a convenient forum or the proper venue for any such suit,***
> ***action, or proceeding.***

(See Noncompete Agreements, attached as part of Complaint Ex. A, ¶ 12 and as part of

Complaint Ex B, ¶ 11) (emphasis added).  The Noncompete Agreements also contain a

provision prohibiting disparagement of Hudson or its officers and owners that states that a

breaching employee "will be liable to the Company" for any resulting harm.  (Noncompete

Agreement attached as part of Complaint Exhibit A, ¶ 13 and Noncompete Agreement

attached as part of Complaint Ex. B, ¶ 12).

Plaintiff asserts that Schultz and Sturman engaged in actionable wrongdoing by purportedly posting false statements and Plaintiff's photograph on Twitter and on a website. (Complaint ¶¶ 17, 23-28). The only allegation of the Complaint that has a connection to Michigan is the assertion that Defendants allegedly "orchestrated a demonstration in Ann Arbor on May 13, 2022 where flyers were posted around town depicting Plaintiff's image and stating 'Winston Shay Stole My Pay." (Complaint ¶ 29).

Schultz worked for Hudson from its Chicago, Illinois office during the entirety of her employment, while Sturman worked from its Pittsburgh, Pennsylvania office. [See Affidavit of Abigail Schultz (Schultz Aff.), attached hereto as Exhibit 2, ¶ 5 and Affidavit of Joshua Sturman (Sturman Aff.), attached hereto as Exhibit 3, ¶ 5]. During their employment with Hudson, neither Schultz nor Sturman was required to travel to or work from Michigan. (*Id.*) Furthermore, the persons who supervised Schultz and Sturman while they worked for Hudson were located in Chicago, Pittsburgh, Sioux Falls, Iowa and Oregon. (*Id.*) Schultz only traveled to Michigan once – to participate in a peaceful protest in October 2021. (Schultz Aff. ¶ 17). Similarly, Sturman traveled to Michigan twice to participate in peaceful protests – in October and November 2021. (Sturman Aff. ¶ 14). Although United Electrical did protest against Hudson on May 13, 2022, the demonstration only occurred in Chicago, not Michigan, and the poster that was disseminated at that time does not contain the statement mentioned in the Complaint that "Winston Shay Stole My Pay." (Schultz Aff. ¶ 20, Sturman Aff. ¶ 17 and Affidavit Exs. A and B).

## II.      LEGAL STANDARD FOR RULE 12(B)(2) MOTION TO DISMISS

When a motion to dismiss for lack of personal jurisdiction is made under Fed. R. Civ. P.

4

12(b)(2), it is the plaintiff's burden to make a *prima facie* case that: (1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of Michigan and (2) that the Due Process clause also allows for jurisdiction under the facts of the case. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If the court determines a Rule 12(b)(2) motion on the parties' written submissions, the plaintiff may not rely on his pleadings to answer the movant's affidavits but must set forth by affidavit or otherwise specific facts showing that the court has jurisdiction. *Serras v. First Tenn. Bank NA*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Federal courts apply the forum state's law to determine whether personal jurisdiction exists. *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.,* 489 F.3d 303, 308 (6th Cir. 2007). Michigan holds that courts have general personal jurisdiction over individuals who have presence or domicile in the state when process is served or, subject to certain limitations, if an individual consents. See Mich. Comp. Law § 600.701. In order for a consent to authorize personal jurisdiction, a court must have power under state law to entertain the action, the state must be a reasonably convenient place for the trial and the agreement must not result from misrepresentation or some other form of unconscionability. Mich. Comp. Law § 600.745. Alternatively, a court can exercise specific personal jurisdiction over an individual who does or causes an act, or for consequences to occur, in Michigan resulting in an action for tort. Mich. Comp. Law § 600.705(2).

Even if a state would authorize personal jurisdiction over a defendant, a court must also determine whether jurisdiction exists under the due process clause of the 14th Amendment of the United States Constitution. *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016). This requires a plaintiff to establish: (1) the defendant purposefully

availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or consequences have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  *Id.*, citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

III.    **RULE 12(B)(2) ARGUMENT**

A.    **MICHIGAN'S LONG-ARM STATUTE DOES NOT AUTHORIZE THE EXERCISE OF PERSONAL JURISDICTION OVER THE DEFENDANTS**

1.    ***Plaintiff Cannot Make a Prima Facie Case for this Court's Jurisdiction under Mich. Comp. Laws § 600.745(2)***

a.    <u>The Forum Selection Clause Is Inapplicable</u>

As discussed above, the Complaint bases this Court's personal jurisdiction over Schultz and Sturman on the Noncompete Agreements included within Complaint Exhibits A and B.  Contrary to this premise, this dispute does not fall within the terms of the forum selection clause and that provision does not provide a basis for the Court to exercise personal jurisdiction over Defendants.

It is well-settled that contractual language will be construed against the party drafting the instrument.  *United Rentals, Inc. v. Keizer*, 355 F.3d 399, 409 (6th Cir. 2004).  This general proposition has been specifically applied for forum selection clauses.  See *Jones & Jones Leasing Co. v. Zepsa Industries, Inc.*, Case No. 19-12746, 2020 U.S. Dist. LEXIS 177260, **\*\* 9-11** (E.D. Mich. 9/28/20)(forum selection clause in terms and conditions not incorporated into underlying contract).  The operative language of the forum selection clauses state that the clause applies to "any disputes ***arising between the parties,*** including any dispute

concerning the interpretation, validity, enforceability, or exercise of any remedies from an alleged breach of the Agreement." Schultz Noncompete Agreement ¶ 12 and Sturman Noncompete ¶ 11, attached as part of Complaint Exs. A and B. Most basically, Shay is not a party to the Noncompete Agreements. At best, he is a third party beneficiary of those Agreements, but the forum selection clause is expressly limited to parties. Moreover, the nondisparagement clause in the Noncompete Agreements, which purports to bar the publication of disparaging or negative comments about Company officers, directors, owners, etc., expressly states that employees are liable **to the Company** (*viz*, Hudson) for any violations. Schultz Noncompete Agreement ¶ 13 and Sturman Noncompete ¶ 12. Further, none of Plaintiff's claims are based on the Noncompete Agreements and all of the alleged disparaging statements and other misconduct directed against him are claimed to have occurred after Defendants' discharge from Hudson. (See Complaint ¶¶ 22- 29). Given these issues, Shay's attempt to utilize the forum selection clause as a basis for personal jurisdiction should be rejected.

Additionally, as is explained in the concurrently-filed Motion to Stay, Hudson has filed and since litigated a very similar lawsuit in the Circuit Court of Cook County, Illinois, rather than bringing that lawsuit in Michigan. The Court should find that this action functions as a waiver of the forum selection clause both by Hudson and Shay, as a party aligned with Hudson. See *Estate of Popovich v. Sony Music Entm't*. Case No. 1:11-cv-2052, 2012 U.S. Dist. LEXIS 34482, **6-7 (N.D. Ohio 3/14/12)(defendant waived forum selection clause due to repeated consent to jurisdiction in other forum in cases involving same parties and similar factual issues).

        b.     <u>Michigan Is Not A Reasonably Convenient Place For The Trial Of
The Action</u>

Even if the forum selection clause did apply to Plaintiff's claims, there is a separate

basis for this Court to rule that there is no personal jurisdiction over Defendants.  For the

following reasons, the Court should determine Michigan is not a reasonably convenient

place for this litigation and that personal jurisdiction does not exist pursuant to Mich  Comp.

Laws § 600.745(2).

In determining whether Michigan is a reasonably convenient forum for a matter,

courts must examine both the litigants' private interests -- availability of compulsory

process, ease of access to proof, distance from the location of the incident giving rise to the

lawsuit, enforceability of a judgment, possible harassment of a party and other practical

problems – and public interests such as administrative difficulties, consideration of the

applicable state law and people who are concerned by the proceeding.  *Lease Acceptance

Corp. v. Adams*, 724 N.W.2d 724, 734-35 (Mich. Ct. App. 2004), citing *Cray v. General Motors

Corp.*, 207 N.W.2d 393, 399 (1973).  Where no witnesses and no evidence of any kind are

located in Michigan, these facts weigh against a finding that Michigan is a reasonably

convenient forum.  *Rolls-Royce Sols. Am. Inc. v. ACS Mfg., Inc.*, 619 F.Supp.3d 756, 767 (E.D.

Mich. 2022).  Here, none of the parties are Michigan residents and this Court is situated

approximately 2,300 miles from Shay and Sturman's residences and 285 miles from Schultz's

residence.  (Complaint ¶¶ 1-3 and Schultz and Sturman Affs. ¶ 5).[1]   Moreover, the one

---

[1]   The Court should also note that neither Defendant is wealthy.  As can be seen by her job offer (part of
Complaint Ex. A), Schultz's annual salary was $36,000.00 – Sturman's annual salary was $35,000.00 (Sturman
Job Offer, part of Complaint Ex. B).

protest specifically alleged to have taken place in Michigan (Complaint ¶ 29) in fact occurred

in Chicago.  (Schultz Aff. ¶ 20, Sturman Aff. ¶ 17 and Affidavit Exs. A and B).  All the other

activities alleged in the Complaint are claimed to have occurred online on Twitter and a

website.  (Complaint ¶¶ 17, 20-28, 35-36, 41, 45, 48 and 56).  Hence, as was the case with

*Rolls-Royce Sols. Am. Inc.,* 619 F.Supp.3d 756, none of the parties, evidence or witnesses are

located in Michigan, there is no nexus with Michigan whatsoever and this is not a dispute

that substantially concerns Michigan residents.  Additionally, as is explained in the

concurrently filed Motion to Stay, this is a case in which Plaintiff's action in filing a case in

Michigan some seven months after Hudson filed a similar complaint in the Circuit Court of

Cook County, Illinois can be deemed harassment.  The Court should accordingly rule that

Michigan is not a "reasonably convenient place for trial" pursuant to Mich. Comp. Laws §

600.745(2) and hold that it lacks personal jurisdiction over Defendants.

>    2.    ***There Is No Personal Jurisdiction under Mich. Comp. Laws § 600.705(2)***

Michigan law does not provide Plaintiff with any alternative basis for personal

jurisdiction apart from the forum selection clause.  Although Michigan's long arm statute

provides for personal jurisdiction over a nonresident for doing or causing an act to be done

or consequences to occur in Michigan that give rise to a tort action, Mich. Comp. Law §

600.705(2), no such act occurred in this instance.

Courts analyzing this statute have ruled that either tortious conduct or injury must

occur in Michigan.  *Green v. Wilson,* 565 N.W.2d 813, 817 (Mich. 1997)(provision not satisfied

when drunk driver involved in accident in Canada after drinking at a tavern in Michigan).

Likewise, personal jurisdiction is not created merely by maintaining a passive website or

engaging in similar conduct.  See *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014)(answering phone call insufficient for provision); *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F.Supp.2d 501, 505-507 (E.D. Mich. 2004)(passive and active website).  In this case, Defendants' alleged activities of creating a Twitter account and website containing purportedly false and defaming statements (Complaint ¶¶ 17, 20-28, 35-36, 41, 45, 48 and 56) did not take place in Michigan and caused no harm to Plaintiff in Michigan.  To the extent any wrongdoing occurred, it took place in Illinois, Pennsylvania and/or Washington state, while any harm would have occurred in Washington state.  (Complaint ¶¶ 1-3 and Schultz and Sturman Affs. ¶ 5).

The purported May 13, 2022 protest that is alleged to have occurred in Ann Arbor, Michigan does not alter this calculus.  In fact, the only protest that took place on May 13, 2022 occurred in Chicago, Illinois.  (Schultz Aff. ¶ 20; Sturman Aff. ¶ 17 and Aff. Ex. A). Moreover, while each defendant did participate in protests in Michigan in Fall 2021 (see Schultz Aff. ¶ 17 and Sturman Aff. ¶ 14), this occurred more than one year before the March 7, 2023 filing date of the Complaint and, thus, any defamation claim arising from those protests would be time-barred.  Mich. Comp. Laws § 600.5805(11).

### B.  THE EXERCISE OF PERSONAL JURISDICTION WOULD VIOLATE DEFENDANTS' DUE PROCESS RIGHTS

#### 1.  *Plaintiff Cannot Demonstrate "Purposeful Availment" By Defendants*

The purposeful availment prong of the due process test for personal jurisdiction ensures that defendants are not haled into forums with which they only have random, fortuitous or attenuated contacts.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-722 (6th Cir. 2000).  Purposeful availment is present when a defendant's contacts with the forum state

proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Means*, 836 F.3d at 649.

In this case, it is clear that Defendants, at most, had random and attenuated contact with the State of Michigan. During her employment with Hudson, Schultz worked in Chicago, while Sturman worked in Pittsburgh during his employment (and now lives in Washington state). (Schultz Aff. ¶ 5; Sturman Aff. ¶ 5). They were never required to travel to or work from Michigan during their employment with Hudson and their supervisors were located outside Michigan. (*Id.*) Schultz only traveled to Michigan once for a protest, while Sturman only went to the state twice. (Schultz Aff. ¶ 17; Sturman Aff. ¶ 14). Furthermore, the May 13, 2022 protest alleged to have occurred in Ann Arbor, Michigan in fact only occurred in Chicago. (Schultz Aff. ¶ 20; Sturman Aff. ¶ 17 and Aff. Ex. A). The website and Twitter account were passive – a fact that also weighs against purposeful availment. *See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 Fed. App'x. 518, 522 (6th Cir. 2006)(discussing difference between passive and active websites). Hence, the Court should conclude that Plaintiff cannot satisfy this required prong of due process analysis.

      2.    **_Plaintiff's Claims Do Not "Arise From" Any Contacts Defendants Had With Michigan_**

To satisfy the "arising from" part of the due process requirements, a plaintiff must demonstrate a causal nexus that establishes that the plaintiff's cause of action is proximately caused by the defendant's contacts with the forum state. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 507-508 (6th Cir. 2014). No such proximate cause exists here. As is discussed above, none of Defendants' alleged actions occurred in Michigan and no harm occurred in Michigan. Instead, to the extent Plaintiff suffered any actionable

wrong, the misconduct occurred in Illinois, Pennsylvania and Washington state, while any harm occurred to Shay at his residence in Washington state. This too is a due process requirement Plaintiff cannot satisfy.

> 3. *The Exercise of Jurisdiction By This Court Over Defendants Would Be Unreasonable.*

The final prong of the Southern Machine test requires a court to consider (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). None of these factor favor Plaintiff.

As residents respectively of Illinois and Washington state, the burden on Schultz and Sturman to litigate in Michigan is substantial as each of them resides hundreds (if not thousands) of miles away and has no substantial contacts with the state. Further, Michigan has no particular interest in adjudicating this dispute – Plaintiff also is a resident of Washington state and none of the events at issue actually occurred in Michigan. There is absolutely no reason why Shay could not have brought suit against Defendants in Chicago, Illinois – a course already taken by Hudson. Given these factors, Defendants respectfully request that the Court conclude that it is contrary to due process for it to exercise personal jurisdiction over them.

## IV. ALTERNATIVELY, THE CASE SHOULD BE DISMISSED FOR IMPROPER VENUE

A motion to dismiss for improper venue based on Fed. R. Civ. Pro. 12(b)(3) is judged by the requirements of 28 U.S.C. § 1391(b) and a plaintiff bears the burden of proving that venue is proper. See *Negash v. Devry Univ.*, Case No. 17-10256, 2018 U.S. Dist. LEXIS 53727, **

6-7 (E.D. Mich. 3/30/18), citing *Audi AG & Volkswagen of Am, Inc. v. Izumi,* 204 F.Supp.2d 1014,

1022 (E.D. Mich. 2022) and *Kerobo v. Southwestern Clean Fuels Corp.,* 285 F.3d 531, 538 (6th Cir.

2002).  In turn, 28 U.S.C. § 1391(b) provides that venue may be brought in a judicial district in

which any defendant resides, if all defendants reside in that location, a district in which a

substantial part of the events or omissions giving rise to the claim occurred, or if there is no

other satisfactory venue, in a judicial district in which any defendant is subject to the Court's

personal jurisdiction.  For the same reasons established above with respect to personal

jurisdiction, this district is an improper venue for this matter.  Neither defendant resides

within the Eastern District, no substantial part of the events underlying Plaintiff's claims

occurred in the district and neither defendant is subject to the Court's personal jurisdiction.

Accordingly, this Court should dismiss the Complaint pursuant to Rule 12(b)(3).

## DEFENDANTS' ARGUMENTS REGARDING FAILURES TO STATE CLAIMS

**I.  LEGAL STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss

any complaint that fails to state a claim upon which relief may be granted.  To survive

dismissal, a complaint must provide enough factual information to state a plausible claim for

relief, but recitals of the elements of a cause of action only supported by legal conclusions

couched as factual allegations are insufficient.  *Hensley Mfg. Inc. v. Propride, Inc.,* 579 F.3d

603, 609 (6th Cir. 2009).  Ultimately, an adequate complaint must contain sufficient factual

allegations to raise a reasonable expectation that discovery will reveal evidence of the

misconduct claimed in the complaint.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

II.   **THE COMPLAINT ITSELF DEMONSTRATES THAT PLAINTIFF WAS NOT DEFAMED AND THAT THE TWITTER ACCOUNT, WEBSITE AND FLYERS WERE MERELY EXPRESSING NON-ACTIONABLE OPINIONS AND WERE SUBSTANTIALLY TRUE**

In Count I of his Complaint, Plaintiff contends that statements supposedly made by Defendants that he "broke the law and stole employee salaries" constitute defamation *per se*. (Complaint ¶¶ 23, 28, 29, 34-37). Similarly, in Count II, Plaintiff claims that Defendants' alleged statements that Shay made "inappropriate jokes" give rise to a claim of defamation *per quod*. (Complaint ¶¶ 41-45). In order to sufficiently set forth a defamation claim, a plaintiff must show that the defendant (1) made a false and defamatory statement concerning the plaintiff; (2) communicated the statement to a third party without privilege; (3) acted with fault amounting to at least negligence; and (4) the statement must be actionable irrespective of special harm (defamation *per se*) or that the publication of the statement caused special harm (defamation *per quod*). *Williams v. Detroit Bd. of Educ.*, 306 Fed. App'x. 943, 946-947 (6th Cir. 2009). Under this standard, Counts I and II fail to state claims of defamation for multiple reasons.

A.   COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION PER SE

Under Michigan law, a claim of defamation *per se* only arises when a plaintiff is accused of a lack of chastity or a criminal offense. Mich. Comp. Laws § 600.2911(1). In order for an allegation regarding a criminal offense to constitute defamation *per se*, the crime must involve moral turpitude or to subject the plaintiff to an infamous punishment. *Marks One Care Rental, Inc. v. Auto Club Grp. Ins. Co.*, 761 Fed.App'x. 516, 524 (6th Cir. 2019); *Lakin v. Rudd*, 896 N.W.2d 76, 82 (Mich. Ct. App. 2016) (battery did not involve moral turpitude nor infamous punishment). When a statement does not make specific allegations of criminal

activity, a plaintiff fails to state a viable claim for defamation per se.  *Marks One Care Rental, Inc.*, 761 Fed. App'x. at 524 (statement that company "was engaged in fraud and dishonest business practices" insufficient); *Daneshvar v. Kipke,* 266 F.Supp.3d 1031, 1057-1058 (E.D. Mich. 2017)(accusations of intellectual property theft, dishonesty, retaliation and conflict of interest did not give rise to defamation *per se* claim).

 This case likewise involves statements that do not rise to the level of defamation *per se*.  Plaintiff claims that he was defamed by statements that he broke the law and stole employee salaries.  (Complaint ¶¶ 23, 28, 29, 35-37).  Shay does not explain how a general statement that he "broke the law" or stole employee salaries implicates criminal conduct covered by Mich. Comp. Laws § 600.2911(1).   As is discussed below, such statements should be deemed hyperbole and opinion. There is no basis to conclude that statements that Plaintiff "stole employee salaries" accuse him of a crime of moral turpitude.  See *Radiant Global Logistics, Inc. v. BTX Air Express of Detroit, LLC*, Case No. 18-12783, 2021 U.S. Dist. LEXIS 153590, ** 18-19 (E.D. Mich. 8/16/21)(statement that former general manager "kept those monies/bonuses owed to his fellow team members to himself" not an accusation involving a crime of moral turpitude.)  Further, even though Michigan has criminalized an employer's failure to make payments of wages and fringe benefits, the applicable statute is a misdemeanor with a maximum imprisonment of one year. See Mich. Comp.  Laws §§ 408.484; 408.485.  In order to be an "infamous crime," an offense must be a felony or a misdemeanor with a punishment of at least two years' incarceration.  *Lakin*, 876 N.W.2d at 84-85 and n 6.

**B.** **THE STATEMENTS AT ISSUE IN COUNT I WERE SUBSTANTIALLY TRUE**

Apart from this, the Complaint itself makes an admission that is fatal to the defamation *per se* claim.  Under Michigan law, if the gist or sting of a published statement is substantially true, a defendant is not liable for defamation.  *Rynewicz v. Clarivate Analytics*, 803 Fed. App'x. 858, 867 (6th Cir. 2020); *Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007). Plaintiff admits that the Pennsylvania and Michigan Department of Labor investigated Hudson for failure to pay certain bonuses, even though no "charges or penalties" were assessed against Plaintiff or Hudson.  (Complaint ¶ 38).  Since Plaintiff references this investigation as part of its defamation *per se* claim, this Court can take notice of the documents attached as Exhibit 4, which demonstrate that Hudson in fact did pay employees unpaid overtime sums as a result of the investigation.  See *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) and *Solo v. UPS Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (court may also consider matters of which it can take judicial notice).  In these circumstances, the Court can conclude that the alleged statements are substantially true.

Moreover, the Court should take note that even though the Complaint references an Exhibit D, supposedly to be a purported flyer depicting Plaintiff's image and stating "Winston Shay stole my pay," (Complaint ¶ 29), the alleged flyer is not actually attached to the Complaint.  As a referenced and central document to Plaintiff's claim, the Court can consider the actual flyer, *Weiner*, 108 F.3d at 89, which is attached to both the Schultz and Sturman Affidavits as Exhibit A.   The actual language of the flyer is "Beware Wegreened. Crimes Victoria Chen and husband Winston Shay's ***companies have been found guilty of or are being investigated for*** by the federal government include:  wage theft . . ."  *Id.* (emphasis

added).  Again, as is discussed above, this statement is substantially true.  Additionally, the

Court should note that the flyer indicates that it is Shay's companies (*i.e.* Hudson), which is

"guilty of" or "being investigated," not Plaintiff himself.

### C.  PLAINTIFF FAILED TO SUFFICIENTLY PLEAD DEFENDANTS MADE THE STATEMENTS WITH ACTUAL MALICE

The Complaint and its exhibits themselves demonstrate that all allegedly defamatory

statements were made in the context of a labor-organizing campaign (see, e.g., Complaint ¶

17 reference to "Hudson Workers United" Twitter account and Complaint Ex. E p. 14

reference to "Victoria and Winston Hate That Their Employees Are Unionizing.").  When an

alleged defamatory statement occurs during a labor dispute, federal law guides a court's

analysis and a plaintiff must show that the defendant acted with actual malice.  *Adamo*

*Demolition Co. v. Int'l Union of Operating Eng'rs Local 150*, 439 F.Supp.3d 933, 944-945 (E. D.

Mich. 2020), *aff'd.*, 3 F.4[th] 866 (6th Cir. 2021).  Actual malice requires a defendant to either (1)

have knowledge that a statement is false or (2) have reckless disregard for whether or not

the statement is false or not.  *Joliff v. Nat'l. Lab. Rel. Bd.*, 513 F.3d 600, 614 (6th Cir. 2008).

Conclusory allegations that a purported defamatory statement was made "with the

knowledge of the falsity of the statements or in reckless disregard of their truth or falsity"

are insufficient to plead actual malice.  *Ryniewicz*, 803 Fed. App'x., at 868.  Here however,

the Complaint only makes conclusory and/or speculative statements regarding Defendants'

purported malice.  (See Complaint ¶¶ 34, 41-45).  This further establishes that Counts I and II

of the Complaint do not state actionable defamation claims.

### D.  ALL STATEMENTS ALLEGED TO BE DEFAMATORY ARE HYPERBOLE AND/OR OPINIONS

In Counts I and II, Shay maintains that the alleged statements   "broke the law and

stole employee salaries" and made "inappropriate jokes" are defamatory. (Complaint ¶¶ 23, 25, 27, 28, 34-37, 41-45). The Court should conclude that Plaintiff cannot state an actionable defamation claim on any of these purported statements because they are hyperbole and opinions.

A defamation claim cannot be brought based on statements that do not state actual, objectively verifiable facts about a plaintiff, even if the statement includes rhetorical hyperbole, vigorous epithet or loose, figurative or hyperbolic language. B*oladian v. UMG Recordings, Inc.*, 123 Fed. App'x. 165, 170 (6th Cir. 2005). The claims at issue here, specifically the alleged statements that "Winston Shay stole my pay" (Complaint ¶ 29) and that Plaintiff was "sexist and makes inappropriate jokes" fall into this category. Phrases such as "stealing employee salaries" and "inappropriate jokes" or words like "sexist" do not have a precise meaning and readers could interpret them in a number of ways. Moreover, a court should look to the larger objective and subjective context of a statement, rather than examining It in isolation – a statement appearing in a location associated with "cajoling, invective and hyperbole" are more likely opinions. *Boulger v. Woods*, 917 F.3d 471, 474 (6th Cir. 2019); see also S*eaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) (statement that plaintiff's hotel was "dirtiest hotel in America" was rhetorical hyperbole and general tenor of rankings undermined impression that defendant was making statement of fact); *Bentkowski v. Scene Magazine*, 637 F.3d 689, 695-696 (6th Cir. 2011) (article filled with humor and sarcasm, with author making no attempt to hide bias, appearing in commentary section was non-actionable opinion). Similarly, in viewing Complaint Ex. C, the webpage that makes the statement about Shay's sexism, it is clear that Defendants were advocating for the

unionization of Hudson and discussing the poor working conditions its workers experienced. Viewed as a whole, the Court should conclude that Defendants did nothing more than express their opinion of Hudson and Plaintiff.

**E.   BOTH COUNTS I AND II FAIL TO STATE THE PRECISE MATERIALLY FALSE STATEMENTS ALLEGEDLY MADE**

Michigan law requires a plaintiff claiming defamation to plead his or her claim with specificity, which, most importantly requires the plaintiff to identify the precise materially false statement published.  *Adamo Demolition Co. v. Int'l. Union of Operating Eng'rs. Local 150, AFL-CIO*, 3 F.4th 866, 875 (6th Cir. 2021); *Rynewicz*, 803 Fed.App'x. at 867.  The only specific statement alleged in the Complaint is "Winston Shay Stole My Pay." (Complaint ¶ 29).  As is discussed above, the actual flyer that the protestors disseminated does not contain this language and only makes substantially true statements. The remaining allegations of defamatory statements do not precisely identify what Defendants are alleged to have published. (See Complaint ¶¶ 23, 25, 28, 29, 34-37, 41 and 45).  Accordingly, this is yet another reason why Counts I and II are deficient.

**F.   COUNT II FAILS TO SUFFICIENTLY PLEAD SPECIAL DAMAGES**

Shay's defamation *per quod* claim contends that the damages he suffered as a result of Defendants' purportedly false statement that he was sexist and told inappropriate jokes include "damage to Plaintiff's professional reputation," "loss of employees," and "loss of business dealings." (Complaint ¶ 46).  This falls far short of Plaintiff's burden to specifically plead special damages.

In order to plead special damages, a plaintiff must allege specific pecuniary harm resulting from the defamation and/or to explain how reputational damage translates into

economic harm.  *Heike v. Guevara*, 654 F.Supp.2d 658, 676 (E.D. Mich. 2009).   The allegations of special damage pleaded in Paragraph 46 of the Complaint are entirely conclusory and fail to specifically allege any pecuniary harm.  Plaintiff fails to explain how the purported damage to his reputation has caused any economic harm.  The alleged loss of employees would harm Hudson – an entity separate and distinct from Plaintiff – rather than Shay himself.  See, e.g. *Flynn v. Greg Anthony Constr. Co.*, 95 Fed. App'x. 726, 733 (6th Cir. 2003)(corporation considered entity separate and distinct from owners and shareholders). Finally, the Complaint does not describe the alleged lost "business dealings" at all, including whether these were Plaintiff's own business dealings or "business dealings" of Hudson.  This deficiency proves yet another reason to dismiss Count II.

III.    **COUNT III OF THE COMPLAINT FAILS BECAUSE IT IS PREEMPTED AND DOES NOT INVOLVE A COMMERCIAL APPROPRIATION OF PLAINTIFF'S IMAGE**

 In Count III, Shay purports to state a claim of misappropriation of likeness arising from Defendants' alleged use of Plaintiff's photograph on the Hudson Workers United Twitter account, website and flyers without Plaintiff's permission.  (Complaint ¶¶ 48-52). This tort occurs when a defendant appropriates the commercial value of the plaintiff's identity by using his or her name, likeness or other indicia of identity for purpose of trade. *Ruffin-Steinback v. de Passe*, 82 F.Supp.2d 723, 729 (E.D. Mich. 2000).   Count III fails for two reasons.

First, in Count IV of the Complaint, Shay raises a claim under the Copyright Act.  The Sixth Circuit recognizes that common-law misappropriation claims are functionally the same as a copyright claim and, therefore preempted by the Copyright Act.  *Wright v. Penguin*

*Random House*, 783 Fed. App'x. 578, 582-583 (6th Cir. 2019).  Pursuant to this principle, the

Court should rule that claims asserted in Count III are preempted.

Moreover, as is discussed above, the allegations of the Complaint, attached exhibits

and other matters that this Court can consider establish that Plaintiff's image was not used

for a commercial purpose.  In a comparable situation in which the People for the Ethical

Treatment of Animals posted video footage of plaintiff and their chinchilla ranch on a

website that also solicited donations, the court granted summary judgment to the

defendant because the website involved matters of public concern.  *Ouderkirk v. PETA*, Case

No. 05-10111, 2007 U.S. Dist. 29451, * 53-55 (E.D. Mich. 3/29/07).  Similarly, when an

educational research and advocacy group utilized statements by the president of the

Michigan Education Association as part of a fundraising letter, its use of the president's

name and his remarks were protected even though the letter had a pecuniary purpose along

with raising matters of public concern.  *Battaglieri v. Mackinac Center for Public Policy*, 680

N.W.2d 915, 920 (Mich. Ct. App. 2004).  This case likewise involves matters of public concern.

Rather than being used for a commercial purpose, Plaintiff's image was used for

advocacy about workplace conditions and union organizing – issues that are recognized as

being of public concern.  For generations, employees have had the right both under federal

and Michigan law to self-organization, to form or join labor organizations and to engage in

other concerted activities for the purpose of mutual aid.  See, e.g., 29 U.S.C. § 157, Mich.

Comp. Laws § 423.8.  More recently, it has been recognized that this right extends to

concerted communications with other workers and third parties regarding legitimate

employee concerns, including terms and conditions of employment, compensation and

wages.  *Compuware Corp. v. Nat'l. Lab. Rel. Bd.*, 134 F.3d 1285, 1291 (6th Cir. 1998); Mich. Comp.

Laws § 408.483a.  Thus, even if Count III were not pre-empted, Plaintiff would still lack a

misappropriation claim against Defendants.

**IV.**   **PLAINTIFF'S COPYRIGHT CLAIM IN COUNT IV CANNOT RECOVER FEES OR STATUTORY DAMAGES AND IS BARRED UNDER THE FAIR USE DOCTRINE**

In Count IV of the Complaint, Shay asserts a claim for copyright infringement.  The

Complaint pleads that Plaintiff owns the rights to a photograph of himself, he registered the

photograph with the United States Copyright Office, Defendants posted the photograph on

the website on or about March 8, 2022 and that Shay has asked Defendants to remove the

photograph but they failed to do so.  (Complaint ¶¶ 54-57).  Shay claims that he is entitled

to statutory damages and attorneys' fees.  (Complaint ¶ 59 and Count IV Prayer for Relief).

Count IV fails to state a claim upon which relief may be granted for two reasons.

Review of the applicable copyright, Registration No. VAu- 1-481-271, indicates that the

effective date of registration was September 23, 2022.  (See Complaint Ex. D).  This date is

more than six months after Defendants are alleged to have posted Plaintiff's photograph on

the website.  (Complaint ¶ 56).  This proves fatal to Plaintiff's requests for statutory

damages and fees.  The Copyright Act expressly prohibits an award of statutory damages or

attorney's fees for infringement of a work that commences before the work receives a

copyright registration, unless registration is made within three months after the first

publication of the work.  17 U.S.C. § 412.  By admission, Plaintiff failed to register his

copyright within three months after Defendants are alleged to have uploaded it to the

website.  Moreover, it does not matter that Defendants supposedly maintained the

photograph of Plaintiff on their website after the registration date.  For purposes of Section

412, infringement commences when the first act in a series of acts constituting continuing infringement occurs.  *Johnson v. Jones*, 149 F.3d 494, 505-506 (6ᵗʰ Cir. 1998).   Count IV makes no claims for actual damages arising from the alleged infringement.

Moreover, Defendants' purported use of Plaintiff's photograph should also be deemed a fair use.  The Copyright Act provides that when a copyrighted work is used for criticism or comment, such use will not be deemed an infringement.  17 U.S.C. § 107.  The statute identifies four factors that should be considered in assessing fair use.

The first factor identified by Section 107 to determine whether the use of a work is a fair use is the purpose and character of the use, including whether the use is of a commercial nature or nonprofit educational purpose.  17 U.S.C. § 107(1).  This factor assesses whether the new work merely copies the original creation or adds something new, with a different purpose or character.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-579; 114 S.Ct. 1164, 1171 (1994).  Here, Plaintiff's photograph was repurposed – while Plaintiff may have originally intended to use the photograph for business or networking purposes, it was reused for a non-profit advocacy and union-organizing website.

The second factor looks at the nature of the copyrighted work, which turns on whether the work is creative and original or factual and informative.  *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348-349; 111 S.Ct. 1282, 1289 (1991).  Here, Plaintiff does not assert that he is an artist or that the photograph has any artistic purpose whatsoever – the copyrighted photograph is simply a business photograph.

As for the third factor, the entire photograph was used on the website and tweets, but the facts that it was used in a noncommercial setting and that the use was no more than

23

necessary to further the purpose and character of the use make this factor of little consequence.  *Monsarrat v. Newman*, 28 F.4th 314, 324 (1st Dist. 2022)(copying anything less than the entire work would have made resulting copy useless).

The final factor looks to the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107(4).  The applicable inquiry requires a showing that the copyright owner has suffered demonstrable harm from the use of his or her work. *Jackson v. Warner Bros.*, 993 F.Supp. 585, 591-592 (E.D. Mich. 1997)(painter suffered no demonstrable harm when painting appeared as prop in movie).  Count IV of the Complaint does not make any allegations that the value of Plaintiff's photograph was harmed by its purported use by Defendants.  Indeed, like the photograph of anyone who is not a celebrity, it is hard to say that the copyrighted photograph has any potential market or value.  Even if it somehow did, the likelihood that Defendants' alleged use detrimentally impacted its market or value is *de minimus*.  Therefore, the Court should conclude that the purported use of Plaintiff's copyrighted photograph by Defendants was a fair use that defeats the claim pleaded in Count IV.

## CONCLUSION

For all of the foregoing reasons, Defendants Abigail Schultz and Joshua Sturman respectfully request that this Court grant their Motion to Dismiss, that the Complaint be dismissed and that the Court take such further action as is just and appropriate.

Date:  June 23, 2023                    Respectfully submitted,

                                        /s/ *Seth D. Matus*

                                        One of Defendants' Attorneys

                                        Seth Matus (IL ARDC 6272674)
                                        Fish, Potter, Bolaños, P.C.
                                        200 E. 5th Avenue, Suite 115
                                        Naperville, IL  60563
                                        (630) 861-1800
                                        smatus@fishlawfirm.com

                                        Channing Robinson-Holmes (P81698)
                                        Megan Bonanni (P52079)
                                        Pitt, McGehee, Palmer
                                        Bonanni & Rivers PC
                                        117 W. Fourth Street, Suite 200
                                        Royal Oak, MI 48067
                                        (248) 398-9800
                                        mbonanni@pittlawpc.com
                                        crobinson@pittlawpc.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on June 23, 2023, he electronically filed the foregoing Brief with the Court using the CM/ECF system.  Notice of this filing will be sent to all parties via the Court's system.  Parties may access this filing through the Court's system.

By: /s/ Seth D. Matus